## Appeal of HALL PRINTING PRESS CO.

Docket No. 776.   Submitted April 20, 1925.   Decided June 23, 1925.

> Where a taxpayer, acting with sound business judgment, over a period of years has consistently charged the cost of patterns and drawings to expense, or depreciated them on its books at a high rate, and its action has met with approval of the Commissioner, it may not, six years after the last of the taxable years in question, reconstruct its capital account and theoretically deduct depreciation for such years at a lower rate.

*Lewis R. Conklin, Esq.*, for the taxpayer.
*A. H. Fast, Esq.*, for the Commissioner.

### Before Graupner, Lansdon, and Green.

This appeal involves a total deficiency in income taxes for the years 1918 and 1919 in the amount of $719.14.

The deficiencies of $689.12 for 1918 and $30.02 for 1919 result from the transfer from 1918 to 1919 income of a 1919 settlement on Government contracts in the amount of $61,776.29, which in turn eliminated a 1919 net loss of $23,519.38 deducted from 1918 net income. A deduction of $12,000 allowed as additional salaries to officers for 1919, together with the adjustments mentioned, resulted in 1919 net income of $26,256.91, instead of a net loss of $23,519.38, and a change in 1918 net income from $58,633.85 to $20,376.94.

The same deficiency letter contained the rejection of a claim for refund of $214.80 covering the year 1918, and the denial of a claim for abatement of $3,041.30 covering the years 1918 and 1919.

There was no war-profits-tax liability for 1918 and no excess-profits-tax liability for either 1918 or 1919.

The taxpayer seeks to offset the deficiencies by now capitalizing expenditures for drawings and patterns which were charged to expense during the years 1909 to 1919, inclusive (or depreciated upon the taxpayer's books over a shorter life than is now claimed), and then depreciating at a 10 per cent rate. From the evidence by oral testimony and exhibits introduced at the hearing, the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of the State of New Jersey with an outstanding capital stock of $250,000. It was organized in 1902 under the name of Trinity Syndicate, and from then until 1908 its only business was to own and rent land and buildings at Dunellen, N. J., to the Aluminum Press Co., a corporation engaged in the manufacture of presses for printing and lithography.

About 1907 a receiver was appointed for the property and effects of the Aluminum Press Co., and on May 1, 1908, the taxpayer acquired the property and assets of the Aluminum Press Co. from the receiver for $276,052.19, divided as follows:

| | |
|---|---:|
| Standard machinery | $74, 019. 97 |
| Standard tools | 11, 989. 79 |
| Special tools | 9, 143. 75 |
| Plant equipment | 7, 922. 66 |
| Drawings | 54, 902. 41 |
| Patterns | 33, 533. 62 |
| Furniture and fixtures | 2, 853. 65 |
| Inventory, raw materials, etc | 60, 586. 89 |
| Accounts receivable | 17, 725. 45 |
| Prepaid insurance | 3, 374. 00 |
| | 276, 052. 19 |

The taxpayer then changed its corporate name to Hall Printing Press Co. and entered upon the business of manufacturing and selling printing presses, both typographic and lithographic.

Immediately after the acquisition of the assets so acquired from the Aluminum Press Co., which the taxpayer had taken over at cost to the Aluminum Press Co., the taxpayer charged off depreciation on the drawings in the amount of $41,176.81 and depreciation on the patterns in the amount of $24,150.29, or as to both accounts 75 per cent of their cost to the taxpayer, leaving the accounts standing upon its books at drawings $13,725.60, patterns $9,383.33.

About November 15, 1909, the taxpayer determined that excessive depreciation had been previously charged off, and wrote back upon its books one-half of the May 1, 1908, charge off, or $20,588.40 as to drawings and $12,075.14 as to patterns.

From May 1, 1908, through 1915 the single article manufactured by the taxpayer was Standard Presses, for which drawings and patterns were used.

From 1916 through 1919 the taxpayer manufactured no Standard Presses, but, as occasion required, used the drawings and patterns for the repair of old presses sold in prior years and for making replacement parts for the same. Such new presses as were made during those years were especially constructed with the use of special drawings and patterns. Beginning with 1916, the taxpayer engaged in war contract work, and through the years 1916 to 1919, inclusive, about 80 per cent of the taxpayer's gross income was from war contracts and but 20 per cent from the general line of work done in the years prior to 1916.

The average life of all drawings and patterns used by the taxpayer was claimed by the taxpayer to be 10 years from the date of their construction.

On January 15, 1910, a fire occurred at the taxpayer's plant, and the patterns acquired in 1908, together with additions of 1909, were entirely destroyed. No damage was done to the drawings. At the date of the fire the patterns stood upon the taxpayer's books at $24,302.68, which amount was fully recovered through insurance. The aggregate then book cost of patterns prior to the fire was $36,377.83, and the difference between the two amounts ($12,075.15) had been either recovered out of earnings during 1908 and 1909 or arbitrarily charged off as depreciation. After the fire new patterns were made as fast as they were needed in the taxpayer's business. During the years from 1908 to 1915, inclusive, the cost of all additions to drawings and patterns was charged direct to operating expense, or the cost was depreciated within each year by amounts equaling the cost within that year, the practice varying from time to time.

Under date of May 25, 1915, the taxpayer for the first time attempted to apply depreciation rates to a plant account, and then only to the single item of "standard tools." Under date of December 31, 1915, the taxpayer applied depreciation rates to all items of its then plant account, but neither drawings nor patterns were included therein.

Under date of June 30, 1916, the taxpayer for the first time applied depreciation rates to drawings and patterns and set up respective capital accounts therefor of $43,286.46 for drawings and $9,125.53 for patterns, to which a rate for depreciation was applied of 5 per cent. In addition thereto the taxpayer depreciated the drawings' and patterns' cost of the first six months of 1916 in the amounts of, drawings $3,514.17, and patterns, $4,027.27.

Under date of December 31, 1916, the taxpayer charged off depreciation on drawings cost of $43,286.46 at the rate of 50 per cent and in the amount of $21,643.23, and depreciation on patterns cost of $9,125.53, at 50 per cent and in the amount of $4,562.77, with the notation on its books "Draw. and Pat. of 1 A. F. F. F. A. F. C. P. T. R. T. D. A. B. B. discarded as superseded patterns destroyed."

In addition thereto it charged off the costs during the last six months of 1916 in the amount of, drawings, $5,389.32, patterns, $3,665.19.

Under date of June 30, 1917, similar charge-offs were made of drawings, $440.10, patterns, $350.87. Under date of June 30, 1917, the taxpayer, for the first time, attempted to set up depreciation reserves as of December 31, 1916, as follows:

*Drawings*

Depreciation charged off to profit and loss:

| | |
|---|---:|
| May 31, 1915 | $48, 993. 36 |
| June 30, 1915 | 562. 22 |
| Dec. 31, 1915 | 7, 083. 85 |
| June 30, 1916 | 3, 514. 17 |
| June 30, 1916 | 2, 164. 33 |
| Dec. 31, 1916 | 21, 643. 23 |
| Dec. 31, 1916 | 3, 547. 45 |
| Total | 87, 508. 61 |

*Patterns*

Depreciation charged off to profit and loss:

| | |
|---|---:|
| May 31, 1915 | $30, 386. 27 |
| June 30, 1915 | 742. 81 |
| Dec. 31, 1915 | 9, 405. 48 |
| June 30, 1916 | 4, 227. 27 |
| June 30, 1916 | 456. 27 |
| Dec. 31, 1916 | 4, 562. 77 |
| Dec. 31, 1916 | 5, 255. 52 |
| Total | 55, 036. 39 |

Under the same date, June 30, 1917, the taxpayer charged off the costs during the first six months of 1917, of drawings, $3,787.26, patterns, $3,643.88.

Under date of December 31, 1917, the taxpayer charged off depreciation at the rate of 50 per cent, on $18,504.95 for drawings, and $3,901.17 on patterns; and, in addition, the costs of drawings and patterns during the last six months of 1917 in the amounts of $4,380.94 as to drawings and $1,608.59 as to patterns.

The depreciation taken on the book cost of drawings and patterns from 1917 on was at a diminishing rate upon a diminishing balance, as follows:

| | Book cost | Rate | Charge off | | Book cost | Rate | Charge off |
|---|---|---|---|---|---|---|---|
| DRAWINGS | | *Per cent* | | PATTERNS | | *Per cent* | |
| Dec. 31, 1916 | $43, 286. 46 | 50 | $21, 643. 23 | Dec. 31, 1916 | $9, 125. 53 | 50 | $4, 562. 77 |
| Dec. 31, 1917 | 18, 504. 95 | 50 | 9, 252. 48 | Dec. 31, 1917 | 3, 901. 17 | 50 | 1, 950. 58 |
| June 30, 1918 | 9, 252. 47 | 25 | 2, 313. 12 | June 30, 1918 | 1, 950. 59 | 25 | 487. 65 |
| Dec. 31, 1918 | 6, 939. 55 | 25 | 1, 734. 89 | Dec. 31, 1918 | 1, 462. 94 | 25 | 365. 74 |
| June 30, 1919 | 5, 204. 46 | 10 | 520. 45 | June 30, 1919 | 1, 097. 20 | 10 | 109. 72 |
| Dec. 31, 1919 | 4, 684. 01 | 10 | 468. 40 | Dec. 31, 1919 | 987. 48 | 10 | 98. 75 |

During the years from 1909 to 1915, inclusive, the entire gross income of the taxpayer was from the sales of Standard Presses in the following amounts:

| | | | |
|---|---:|---|---:|
| 1909 | $134, 969. 32 | 1913 | $282, 223. 58 |
| 1910 | 312, 060. 04 | 1914 | 240, 435. 16 |
| 1911 | 338, 699. 09 | 1915 | 298, 328. 15 |
| 1912 | 311, 108. 34 | | |

In the years thereafter the gross income was divided into—

| | Standard Presses | War work and special jobs | New Standard Presses | Repairs to old Standard Presses |
|---|---|---|---|---|
| 1916 | $145,214.39 | $647,268.00 | $118,227.38 | $26,987.01 |
| 1917 | 119,371.07 | 491,250.00 | 93,850.79 | 25,520.08 |
| 1918 | 162,485.56 | 698,989.61 | 138,089.06 | 24,396.50 |
| 1920 | 104,893.50 | 538,434.89 | 76,358.02 | 28,535.48 |

The taxpayer claims the cost of drawings acquired in 1908 and thereafter constructed to be:

| Year | Total cost at Jan. 1 | Additions | Year | Total cost at Jan. 1 | Additions |
|---|---|---|---|---|---|
| May 1, 1908 | $54,902.41 | | May 1, 1914 | $84,195.01 | $5,405.87 |
| 1909 | 54,902.41 | $3,009.81 | 1915 | 89,600.88 | 10,325.01 |
| 1910 | 57,912.22 | 2,729.16 | 1916 | 99,925.89 | |
| 1911 | 60,641.38 | 3,233.49 | 1917 | 99,925.89 | |
| 1912 | 63,874.87 | 12,412.74 | 1918 | 99,925.89 | |
| 1913 | 76,287.61 | 7,907.40 | 1919 | 99,925.89 | |

The taxpayer claims the cost of patterns constructed after the fire of April 15, 1909, to be:

| Year | Total cost at Jan. 1 | Additions | Year | Total cost at Jan. 1 | Additions |
|---|---|---|---|---|---|
| 1910 | | $5,845.69 | 1915 | $36,325.04 | $13,335.05 |
| 1911 | $5,845.69 | 3,279.84 | 1916 | 49,660.09 | |
| 1912 | 9,125.53 | 13,431.72 | 1917 | 49,660.09 | |
| 1913 | 22,557.25 | 6,961.84 | 1918 | 49,660.09 | |
| 1914 | 29,519.09 | 6,805.95 | 1919 | 49,660.09 | |

The taxpayer now claims a cost book value for depreciation purposes as follows:

| Year | Drawings | Patterns | Year | Drawings | Patterns |
|---|---|---|---|---|---|
| 1916 | $99,925.89 | $49,660.09 | 1918 | $63,324.30 | $49,660.09 |
| 1917 | 99,925.89 | 49,660.09 | 1919 | 43,518.60 | 49,660.09 |

With reference to the item "Additions" in the foregoing tabulations from May 1, 1908, through the year 1910, the taxpayer charged the additions direct to operating expense, and from 1911 to 1915, inclusive, charged the additions first to operation and then to depreciation. The treatment of such additions during 1911 to 1915, inclusive, was upon the basis of a life for drawings and patterns so added of not exceeding six months. All additions from 1916 on were immediately depreciated by an amount equal to the respective costs.

The taxpayer claims depreciation on drawings and patterns at the rate of 10 per cent for the years 1916 to 1919, inclusive. The

Commissioner disallowed any depreciation deduction for drawings and patterns during the years 1916 to 1919, inclusive, except as actually taken during those years upon the books of the taxpayer.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LANSDON: This appeal has been argued by the taxpayer upon the assumption that a decision favorable to the taxpayer with reference to the small deficiencies for the years 1918 and 1919 would influence the Commissioner to grant refunds involving some $25,000 with reference to taxes paid for the years 1916 and 1917, which years involve the same facts as are presented by this appeal. Because of the importance of the matter from the taxpayer's standpoint, we deem it desirable to state the reasons for our decision irrespective of the small amount involved in the deficiencies which are the basis for this appeal.

The single question raised by this appeal is whether the taxpayer shall, six years after the latest taxable year involved, be permitted to reconstruct its capital account as to drawings and patterns so as to now theoretically deduct depreciation for the years 1916 to 1919, inclusive, with the resulting reduction in its taxable income for those years and increase in its invested capital for the years 1917 to 1919, inclusive. Upon the authority of *Appeal of The Sneath Glass Co.* 1 B. T. A. 736, such a procedure should not be permitted.

It is apparent from our findings of fact that the taxpayer was continually revising and changing its accounting system as to depreciation in order to gain the most benefit apparent at the time. So far as that was a consistent policy it has been followed to the present appeal. From the standpoint of the taxpayer that policy has been one of conservatism throughout its history. In 1908 it took over drawings and patterns which had been used in its predecessor's business for possibly six years. It took them at cost to its predecessor. It was reasonable immediately to charge off 75 per cent of that cost for second-hand assets of doubtful value and uncertain life for usefulness. Such drawings and patterns as the taxpayer made in 1909 it charged directly to operating expense, a conservative treatment and unquestionably done under the belief that the additions were used up in manufacturing of that year.

In November, 1909, it charged back upon its books one-half of the 1908 charge-off. It left those capital amounts undisturbed upon its books until June 30, 1916, being contented during each year of the interim to charge off only the cost of annual additions to drawings and patterns.

But its business increased by leaps and bounds in 1916, going from a gross business in 1915 of less than $300,000 to a total for 1916 of about $800,000. It then brought to light a drawings account of $43,286.46 which it ·accumulated by the addition of expense which had been charged off from 1908 on, and against that it applied a depreciation rate of 55 per cent for 1916. . Similar treatment was applied to patterns. The net income for that year was thereby conservatively reduced by some $26,000, in addition to $17,000 expense for 1916 drawings and patterns charged directly against the year's earnings. The 50 per cent charge-off of December 31, 1916, was carefully accompanied by the notation " Discarded as superseded, patterns destroyed."

Then appears the first Excess Profits Tax Act of March 3, 1917, and on June 30, 1917, the taxpayer set up a depreciation reserve as of December 30, 1916, continued to charge off 1917 additions .within the year, and at the end of the year further depreciated by 50 per cent the remaining balance of drawings and patterns as the same (with some discrepancies) stood upon its books. In 1917 its. gross income was over $600,000, in 1918 upward of $850,000. During 1918 it applied a 25 per cent depreciation rate to the balance of the drawing and pattern account; during 1919, a 10 per cent rate. In the face of having so expressed its belief in the shortness of useful life of its patterns and drawings, the taxpayer now seeks to reverse its action over the 11 years in question and to justify a life of 10 years for its drawings and patterns on the basis of 1908 cost and additions.

We observe that after the fire in January, 1910, when all of the taxpayer's patterns were destroyed, a gross business was done for that year of over $300,000, or an increase over 1900 of $170,000, and · yet the taxpayer shows expense of patterns for that year of less than $6,000, which convinces us that the patterns acquired from the Aluminum Press Co., and probably the drawings as well, were not of the urgent necessity in the business which the taxpayer would now have us believe. That fact, together with the taxpayer's treatment of the matter over all the years from 1908 to 1919, inclusive, forces us to the conclusion that the conservative action repeatedly taken by the taxpayer during those years was fully justified.

If further evidence were required, we merely observe that the $54,000 of drawings acquired in 1908 must have been constructed during the years going back to 1902, and, even on an average age of 10 years dating from 1905, would have been entirely exhausted by January 1, 1916, upon the taxpayer's own claim as to their period of usefulness.

So far as the patterns which were constructed after the 1910 fire are concerned, we are not convinced that the conservative treatment by the taxpayer, which was approved by the Commissioner, should

be disturbed as an unreasonable allowance for depreciation in the years during which the deductions were in fact made.

As to such questionable matters as drawings and patterns—that is, whether they are deductible expenses or capital expenditures, and the period of their usefulness, if the latter—when a taxpayer has once acted reasonably with sound and conservative business judgment that meets with the approval of the Commissioner at the time, such action should not be reversed when the sole reason therefor is the apparent purpose of later reducing taxes otherwise assessable.